## Hill vs. Lockwood and another.

*February 10 — March 3, 1885.*

*Appeal to S. C.: Temporary injunction:* Ex parte *affidavits: Trademarks.*

1. Upon appeal from an order refusing to dissolve a temporary injunction this court will not, upon mere *ex parte* affidavits, pass upon the merits of the controversy further than is necessary to the determination of the appeal.
2. The allegations of the complaint herein (too voluminous to be here stated) are *held* to show a legal right in the plaintiff to the exclusive use of the trade-name "Clysmic" for mineral waters from her spring, and the affidavits of the defendant are *held* not to disprove such right so conclusively as to render it the duty of the court to dissolve a temporary injunction.

APPEAL from the Circuit Court for *Waukesha* County.

Appeal from an order denying a motion to dissolve a temporary injunction, granted at the commencement of the action.

The plaintiff owns a parcel of land in the village of Waukesha, on which there is a spring, the water of which, as she alleges and the defendants admit, is valuable for its curative qualities. She purchased this land in January, 1879, of Warner and Showerman, at the instigation (as she alleges) of the defendant *Lockwood,* who then had a contract with her grantors for the purchase of the water from the spring, at a stipulated price, for exclusive sale by him in certain states. After plaintiff made the purchase she entered into a contract with *Lockwood* to sell him such water at the same price, and gave him the exclusive right to sell the same for twenty years. She agreed not to sell the water to any other person during that term. *Lockwood* did not expressly agree to purchase any specific quantity of the water.

At the time the contract between *Lockwood* and the plaintiff's grantors was made (which was in May, 1878), and

before it was executed, the parties agreed that the spring should be named "Clysmic." It is described in such contract as the spring of Warren and Showerman, "now called and to be known as the Clysmic spring."

Under both contracts the owners of the spring shipped the water thereof from time to time, as required, to *Lockwood*, at New York city, in barrels labeled "Clysmic," and he carbonated and bottled the water, placed it upon the market, and made large sales thereof. The bottles containing it were marked "Clysmic," and *Lockwood* advertised it extensively as "Clysmic Water," from Waukesha springs. He also duly registered that name as his trade-mark in the United States patent office, soon after he entered into such contract with the plaintiff. Afterwards *Lockwood* purchased a small piece of land adjoining the land of the plaintiff, dug a well thereon, found water, and in February, 1884, commenced shipping the same from such well to New York, which he there bottled and sold as "Clysmic Water," the same as he did the water from plaintiff's spring. From that date he shipped the same quantity from each source every alternate week, and when this action was commenced had used 600 barrels from his own well. The contract price with plaintiff was one dollar per barrel.

The plaintiff maintains that the name "Clysmic" is a trade-name applied to her spring, of which she is the proprietor; that *Lockwood* has no legal right to use it in connection with the sale of water from his well, or from any source other than the spring on her land; and that his unauthorized use of it as aforesaid is a fraud upon her which ought to work a forfeiture of the contract. The demand for judgment is that the contract be declared forfeited and abandoned by *Lockwood*, by reason of such alleged fraud; also for damages and an injunction. An accounting is demanded as to the amount of water which he has sold from his own well under such trade-name.

The defendant *French* is the agent and manager of *Lockwood's* business at Waukesha, in charge of his well and the plaintiff's spring, and is made a party to the action solely for that reason.

The circuit judge granted a temporary injunction restraining the defendants from using the name "Clysmic" in the sale of any water other than that drawn from the spring on plaintiff's land. The defendants moved, on verified answers and affidavits, that the injunction be dissolved. The motion was resisted, and many other affidavits were read in opposition thereto. The court made an order denying the motion, which is the order appealed from.

*Wm. P. Lynde*, counsel for the appellants, contended, *inter alia*, that the plaintiff was not entitled to an injunction. It is only when the legal title is clear that a court of equity will interfere by injunction to restrain the use or the colorable infringement of a trade-mark. Browne on Trade-marks, sec. 462; *Partridge v. Menck*, 2 Sandf. Ch. 622; 2 Barb. Ch. 101; 1 How. App. Cas. 558; *Spottiswoode v. Clark*, 10 Jur. 1043; *Coffeen v. Brunton*, 5 McLean, 256; *Amoskeag Mfg. Co. v. Spear*, 2 Sandf. Sup. Ct. 599; *Merrimack Mfg. Co. v. Garner*, 4 E. D. Smith, 387; *Fetridge v. Merchant*, 4 Abb. Pr. 156.

For the respondent there was a brief by *Jenkins, Winkler & Smith*, of counsel, and oral argument by *C. H. Van Alstine.*

LYON, J. The chief purpose of this action is to procure the cancellation of the contract between the plaintiff and *Lockwood*. The claims for an accounting and for damages are merely incidental, and are comparatively of minor importance. Whether *Lockwood* has committed any fraud upon the plaintiff which may work a forfeiture of his contract with her, depends upon the question whether, under the contract, he has the right to affix the name "Clysmic"

to water from his own well for sale in the market. The contract does not, in express terms, confine his use of that name to water taken from plaintiff's spring; but the plaintiff maintains that to be the spirit of the contract and the clear meaning and intention of the parties thereto, manifested by the history of *Lockwood's* connection with the spring, by various provisions in such contract, as well as in his contract with Warner and Showerman, and by all the surrounding circumstances under which both contracts were made.

The case comes before us on *ex parte* affidavits alone, for the pleadings are nothing more. For this reason we are very reluctant to pass upon the merits of the controversy on this appeal. Indeed, it would be improper to go any further in that direction than we are compelled to go in order to determine the appeal. Otherwise we might unjustly prejudice the rights of one or the other of the parties on the final hearing. Mere *ex parte* affidavits are, at best, a very unsafe basis for judicial action. They are usually drawn by counsel, and are frequently sworn to by affiants without a clear knowledge of their contents. Thus we have in the record before us an affidavit to a fact made by a person, and another affidavit of the same person denying the fact first sworn to and stating that he did not understand the contents of his first affidavit. Besides, the affidavits here are in direct conflict on some points, which seem to us now to be quite material to a correct determination of the case on the merits. For example, the complaint alleges that the curative properties of the water of plaintiff's spring had been well known for several years before 1878, and the owners had shipped to, and sold the same in, different parts of the United States during all those years. Also that as early as 1877 the same was so shipped to New York city, in barrels marked "Clysmic." All this is denied in the answers, and in the affidavits read in support of the motion to

Hill vs. Lockwood and another.

dissolve the injunction. It is stated therein that *Lockwood* first discovered the efficacious qualities of the water in the fall of 1877, and that in May, 1878, he "discovered, invented, adopted, and appropriated" as his own the word "Clysmic," as his trade-mark and symbol, to distinguish as his, and as sold and dealt in by him, all mineral waters which he might thereafter place upon the market.

It is further stated in some of the affidavits that *Lockwood* induced the plaintiff to purchase the spring, and enter into the contract with him, by promising to use his best efforts to establish and extend the business of selling the water, and by assuring her that when the contract should expire she would have a spring with a name and reputation of great value. This is substantially denied in the opposing affidavits. The affidavits are so conflicting, inconclusive, and unsatisfactory, on what we now regard as material questions of fact in the case, that we deem it our duty, as an act of justice to all the parties, to abstain from determining the merits of the action on this interlocutory appeal any further than is absolutely necessary to the decision of the questions presented by such appeal.

We must, of course, determine whether the complaint states sufficient facts to authorize the allowance of a temporary injunction. The learned counsel for the defendant invokes the rule that "it is only when the legal title is clear that a court of equity will interfere by injunction to restrain the use or colorable infringement of a trade-mark." We are of the opinion that the allegations of the complaint show a clear legal right in the plaintiff to the exclusive use of the trade-name "Clysmic," and hence that the injunction was properly allowed in the first instance.

We are not prepared to hold that the affidavits read on the hearing of the motion to dissolve the injunction, considering all of them on both sides, as well as the pleadings, sufficiently disprove the plaintiff's right to an injunction, so

as to render it the duty of the court to dissolve it. We believe it the safer and better course to let the injunction stand until the proofs are in. The court can then determine the facts intelligently, but cannot do so on these affidavits alone.

We come to this conclusion the more readily because the learned circuit judge so held, and because the injunction is of but little importance to *Lockwood*. He still has control of plaintiff's spring, and can continue to have all the water therefrom required in his business. There is no claim that the supply is insufficient. He is only restrained from selling the product of his own well as "Clysmic Water." If the trial of the cause results in establishing his right to do so, probably the cost of the water taken from plaintiff's spring, which, but for the injunction, he would have taken from his well, will be assessed as damages in proceedings on the undertaking for the injunction. True, *Lockwood* claims more serious injury, but the injury complained of is more properly the result of the effort to annul his contract.

*By the Court.*— The order of the circuit court denying the motion to dissolve the injunction is affirmed.